**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____  )
                                          )
NINA MARIE COLEMAN,                       )
                                          )
                         Plaintiff,       )
                                          )
            v.                            )        Civil Action No. 18-2268 (BAH)
                                          )
ALEJANDRO MAYORKAS, Secretary,            )
U.S. Department of Homeland Security,     )
                                          )
                         Defendant.       )
_____  )

## <u>MEMORANDUM OPINION</u>

Plaintiff Nina Marie Coleman brings this action against the Secretary of the U.S.

Department of Homeland Security ("DHS"), under Title VII of the Civil Rights Act of 1964, as

amended, *see* 42 U.S.C. § 2000e-16, for alleged race discrimination and retaliation by DHS

component, the Federal Emergency Management Agency ("FEMA"), in not selecting her for a

position in 2017, less than a year after FEMA had terminated her for misconduct.[1]  Pending

before the Court is FEMA's Motion for Summary Judgment, ECF No. 42.  For the reasons

discussed below, this motion is granted.

---

[1]    The current Secretary of DHS is automatically substituted as a party, *see* FED. R. CIV. P. 25(d), and is the only proper defendant in this Title VII action, *see* 42 U.S.C. 2000e-16(c); *see also Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) ("the head of the agency is the only proper defendant in a Title VII action"); *Davis v. Califano*, 613 F.2d 957, 958 n.1 (D.C. Cir. 1980).  For clarity, given that actions taken by FEMA are at issue, this DHS component is referenced as the defendant.  The six individuals whom plaintiff named as defendants—Brock Long, Joshua Stanton, Cecelia Nadeau, Robyne Jackson, Faye Green, and Racquel Mahone—are dismissed as party defendants.  *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995) (dismissing claims brought against individual defendant in his personal capacity because he could not be liable for Title VII violations).

## I.      BACKGROUND

Plaintiff alleges that FEMA discriminated against her based on her race (African American) and retaliated against her for having engaged in protected activity when, on August 22, 2017, the agency deemed her unfit for employment with a FEMA contractor and, on November 1, 2017, FEMA withdrew its tentative offer of a customer service position after having found her ineligible for hire.  These determinations did not occur in a vacuum but were preceded by disciplinary actions taken against plaintiff, including an Official Reprimand on October 25, 2016, and termination on February 13, 2017, from her position as a Disaster Survival Assistance ("DSA") Specialist.[2]  This relevant context for the two challenged actions is reviewed below in the factual background, followed by a brief summary of the procedural history of this lawsuit.

### A.      FACTUAL BACKGROUND

#### 1. Plaintiff's Employment as a FEMA Disaster Assistance Reservist

In 2008, plaintiff became as a Disaster Assistance Employee ("Reservist") at FEMA. Def.'s Statement of Material Facts As To Which There Is No Genuine Dispute ("Def.'s SMF") ¶ 1, ECF No. 42-2.  The position involved "deploy[ment] to various parts of the country following natural disasters to provide support services to survivors and their communities."  *Id.* ¶ 2.  On February 24, 2008, plaintiff signed a form acknowledging her understanding that she occupied "a

---

[2]      This case is the earliest filed of three employment discrimination suits initiated by plaintiff against FEMA currently pending before this Court.  While the instant case alleges race discrimination and retaliation occurring *after* FEMA terminated plaintiff on February 13, 2017, Civil Case No. 19-3496 (BAH) alleges race discrimination and retaliation in connection with plaintiff's reassignment during a deployment to Forrest Hills, New York in 2013, and Civil Case No. 20-0395 (BAH) alleges race discrimination and retaliation occurring in 2016 during plaintiff's deployments to Baton Rouge, Louisiana and Norfolk, Virginia, and in connection with plaintiff's termination in 2017.

temporary civil service excepted position" from which she could be "terminated at any time, with cause (e.g., poor performance or misconduct) or without cause (e.g. downsizing of workforce, change in program direction)."  Def.'s Mem. in Support of Def.'s Mot. for Summ. J. ("Def.'s Mem."), ECF No. 42-1, Ex. 1 (Conditions of Employment for Disaster Assistance Employees (DAEs)), ECF No. 42-3.  She also acknowledged that, as a condition of employment, she would "travel in the most expeditious and cost effective manner."  *Id.*, Ex. 1.

Plaintiff has held "disaster-related positions authorized under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, Public Law 93-288, as amended."  Def.'s Reply in Further Support of Def.'s Mot. for Summ. J. ("Def.'s Reply"), ECF No. 51, Decl. of Cecelia Nadeau, Chief of the Federal Branch in the Personnel Security Division ("PSD"), Office of the Chief Security Officer ("Nadeau Decl.") ¶ 29, ECF No. 51-1.  These "temporary or term appointments . . . primarily include Local Hires, Reservists, and [Cadre of On-Call Response and Recovery Program employees ('CORES')]" and "are funded from disaster monies allocated through Presidentially Declared disaster or national emergency events," *id.* ¶ 29, not from appropriated funds, *id.* ¶ 30.  These employees are not entitled to appeal an employment action to the Merit Systems Protection Board.  *Id.*  "If any appeal rights are afforded an employee in one of these positions, they are determined solely by the agency of record."  *Id.*

"Stafford Act temporary or term disaster-related positions are not subject to the provisions set forth in 5 C.F.R. § 731 in regard to determining suitability (or fitness) for federal service to include the Due Process rights therein."  *Id.*  ¶ 31.  Instead, FEMA promulgated an equivalent standard, *id.* ¶ 32; *see* Def.'s SMF ¶ 85, which in relevant part provides that, "[f]or contractor employee positions," nine enumerated "factors may be considered, as a basis for finding an excepted service federal applicant, appointee or contractor employee unfit."  Nadeau

Decl., Ex. 7 (DHS Instruction 121-01-007-01 Revision 01, Personnel Security, Suitability and Fitness Program) ("DHS Instruction") at 20.  The DHS Instruction further states that "[t]he qualification standards established provide that certain reasons may disqualify an applicant for appointment," and goes on to list, as "among" the factors that "may be included as disqualifying reasons: (1) Misconduct or negligence in employment; . . . [or] (3) Material, intentional false statement or deception or fraud in examination or appointment[.]"  *Id.*, Ex. 7 at 20.  Under 5 C.F.R. § 731, too, misconduct is a factor to "be considered a basis finding a person unsuitable" for employment.  5 C.F.R. § 731.202(b)(1).

"For any given deployment, a Reservist is assigned a temporary duty supervisor and chain of command specific to that deployment."  Def.'s SMF ¶ 3.  "While temporary duty supervisors provide day to day instructions and assignment of work during the deployments, at all times the Reservist Program Manager is the supervisor of record."  *Id.*  A temporary supervisor lacks "the authority to take disciplinary action against [a] Reservist," and any misconduct or performance issue is directed to the Reservist's supervisor of record.  Def.'s Mem., Ex. 8, Decl. of Bellance (Faye) Green, FEMA's Branch Chief, Cadre Management and Training, Individual Assistance Division, Recovery Directorate ("Second Green Decl.") ¶ 4, ECF No. 42-10.  Racquel Mahone, DSA Reservist Program Manager, was plaintiff's supervisor of record during the period of the challenged actions in this lawsuit.  Def.'s SMF ¶ 34; *see* Def.'s Mem., Ex. 5, Decl. of Racquel Mahone, DSA Reservist Program Manager ("Mahone Decl.") ¶¶ 10-11, 17, ECF No. 42-7.

Regarding travel, a Reservist is expected to "select the mode of transportation most advantageous to the Government" and, ordinarily, "[a]irlines should be used for long distance travel exceeding 300 miles."  Def.'s Mem., Ex. 13 (Notice of Termination of Appointment,

"Notice of Termination") at 2, ECF No. 42-15.   If the Reservist opts for an alternative mode of transportation, FEMA's travel policy requires that she "submit an approved cost comparison . . . to document that the selected alternative method is less expensive than the cost of the airline." *Id.*  The comparison "must include the expense of transportation to and from the common carrier terminal," and "must also consider additional costs that would be incurred as a result of the alternate mode of transportation," such as overtime.  *Id.*  The Reservist would not be reimbursed for "excess transportation costs incurred . . . by unauthorized modes of transportation."  *Id.*  A cost comparison "is not authorization to drive," but a statement about "the difference in cost" between travel by car and by air.  Mahone Decl. ¶ 134.  Nor is the cost comparison an "authorization to travel [by car] over 300 miles without a valid Reasonable Accommodation." *Id.* ¶ 137.  A "signed cost-comparison statement has no bearing on the date by which all travel must be completed."  Def.'s SMF ¶ 61.

### 2. Plaintiff's Official Reprimand

"During August and September, 2016, FEMA deployed [p]laintiff to Baton Rouge, Louisiana, as a Survivor Mobile Application Reporting Analyst . . . in Disaster Survivor Assistance . . . Branch I."  Def.'s SMF ¶ 4.  Her principal responsibility was "draft[ing] the daily summary report for Branch I."  *Id.* ¶ 5.  Mahone issued plaintiff an Official Reprimand on October 25, 2016, "for inappropriate conduct and failure to follow instructions relating to [p]laintiff's emails about English lessons and demonic spirits, her refusal to attend a mandatory two-day training for personal reasons, and failure to follow the proper demobilization process." *Id.* ¶ 35.  The Official Reprimand noted that plaintiff's field supervisor had "counseled [plaintiff] on [her] inappropriate and unprofessional emails" on August 31, 2016.  Def.'s Mem., Ex. 11 ("Official Reprimand") at 2, ECF No. 42-13.

5

Plaintiff does not dispute issuance of the Official Reprimand, but nonetheless denies having been counseled on August 31, 2016.  Pl.'s Rule 7(H)(1) Statement of Genuine Issues of Material Facts Precluding Summ. J. ("Pl.'s Resp. SMF") ¶ 35, ECF No. 45-1.  Plaintiff's appeal of the Official Remand was unsuccessful.  *See* Pl.'s Response in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 45, Ex. 8 (Final Agency Decision) at 9, ECF No. 45-9.  Consequently, the Official Reprimand was neither withdrawn nor removed from plaintiff's official personnel file.  Mahone Decl. ¶ 107.

### 3. Plaintiff's Deployment to Norfolk, Virginia

Following a deployment to Savannah, Georgia, from October 27, 2016, through November 7, 2016, Def.'s SMF ¶ 36, FEMA deployed plaintiff to Norfolk, Virginia on November 8, 2016, "as a DSA Specialist serving as Crew Lead for DR-4291-VA," *id.* ¶ 37.  She reported to DSA Branch I Director Mary Dawson.  *Id.* ¶ 38.  Esther Herrera was the Task Force Leader for that Branch.  *See id.* ¶ 6.

As the Virginia deployment wound down, on December 13, 2016, Dawson sent staff an email offering "three check out dates (December 21, 22, or 23) and requiring that all demobilization travel be completed by Friday, December 23, 2016."  *Id.* ¶ 39.  Plaintiff responded that she would check out on Thursday, December 22, 2016, and travel on Friday, December 23, 2016, *id.* ¶ 40, by car, *see* Def.'s Mem., Ex. 9 ("Combined Email String") at 39, ECF No. 42-11.

Inconsistent with the requirement that demobilization be completed by December 23, 2016, plaintiff's timesheet indicated that she would be traveling on Saturday, December 24, 2016.  *See* Def.'s SMF ¶¶ 43, 45.  According to FEMA, "[w]eekend travel was not authorized for this deployment," *id.* ¶ 46, and a Reservist could "deviate from the authorized travel dates [only]

if [she] ha[d] prior approval from headquarters or ha[d] a valid Reasonable Accommodation providing for different travel arrangements," *id.* ¶ 42.  Dawson returned plaintiff's timesheet with instructions that she review it.  *See id.* ¶ 43.  Plaintiff responded that "she would change her hours after completing a cost-comparison statement."  *Id.* ¶ 44.

On December 23, 2016, plaintiff submitted to Dawson a timesheet, which Dawson instructed plaintiff to re-review because, again, it reflected travel on Saturday, December 24, 2016.  *Id.* ¶ 45.  Plaintiff responded by email to Dawson on December 24, 2016, stating she was unaware she could not travel on a Saturday, *id.* ¶ 47, as she had done while "work[ing] with other Branch Directors for other deployments," *id.* ¶ 49.  She also informed Dawson that she had "a Reasonable Accommodation that permitted her to take 'longer than normal'" to travel.  *Id.* ¶ 47; *see* Combined Email String at 44.  Dawson, who "was not aware of a 'reasonable accommodation' on file at [FEMA headquarters]," instructed plaintiff by email on December 24, 2016, to "continue with travel . . . as planned."  Combined Email String at 43; *see* Def.'s SMF ¶ 48.  Further, Dawson advised that, for future deployments, plaintiff should notify the Branch Director of the reasonable accommodation "to avoid any sort of confusion."  Def.'s SMF ¶ 48.  Plaintiff completed her travel on Sunday, December 25, 2016.  *See id.* ¶ 50; *see id.* ¶ 62.

By email on December 27, 2016, Dawson asked plaintiff to "submit an amended timesheet that took into account [p]laintiff's purported reasonable accommodation."  *Id.* ¶ 51.  Dawson commented that she had "provided the travel guidance for this deployment, and everyone was given the same guidance[] on when to checkout and travel," yet plaintiff "chose to 'work' on [her] checkout day, when [Dawson] clearly stated that [plaintiff's] last day would consist solely of training and checkout."  Combined Email String at 47; *see* Def.'s SMF ¶ 51.  Dawson noted that plaintiff "could have been driving home on Thursday[, December 22, 2016],"

as she was given the option to check out on December 21, 22 or 23. Combined Email String at

47. Even with a reasonable accommodation, Dawson stated, plaintiff would not have been

permitted to "travel on days outside of the travel guidance [she] provided." SMF ¶ 51. Plaintiff

responded:

> Mary I am tired, home and I am not going to continue to be harassed
> and bullied over my hours nor travel. I have never needed an RA to
> travel before now and I have traveled for three years by car. I would
> think my RA is in my file . . . .
>
> I do not feel and RA# has [anything] to do with traveling, we have
> right to travel by car with or without an RA. I will seek guidance[]
> from others and contact you guys back. I feel this is harassment.

*Id.* ¶ 52; *see* Combined Email String at 46.

Plaintiff appeared to have contacted FEMA headquarters on December 27, 2016, to

obtain the requisite information about her reasonable accommodation. Combined Email String

at 55. When she learned that the "designated RA person" was not in the office, she sent an email

to Herrera, on December 29, 2016, stating she would "not worry about RA number, this has gone

on too long and is unnecessary." *Id.* at 57.

Plaintiff had requested a reasonable accommodation on or about October 28, 2016, Pl.'s

Opp'n, Ex. 2 (Report of Investigation, Agency Case No. HS-FEMA-27306-2016, "2016 ROI")

at Bates 000075-076, ECF No. 45-3, on her doctor's recommendation that, due to "minor lumbar

neuritis," she not sit or stand for more than 2 hours at a time, 2016 ROI at Bates 000077.[3] She

notified Herrera, the Task Force Leader, *see* Def.'s SMF ¶¶ 4, 36, of the accommodation request

by email on November 9, 2016, *see* 2016 ROI at 000545. FEMA viewed this as a temporary

reasonable accommodation for purposes of a prior deployment only and not permanent, *see*

---

[3]      The Court adopts the parties' custom of citing the 2016 and 2017 Reports of Investigation
by Bates number.

Combined Email String at 54, 59, and thus this temporary reasonable accommodation did not apply to the Virginia deployment, *see* Def.'s SMF ¶ 53.  In plaintiff's view, her reasonable accommodation "request was current" pursuant to FEMA policy.  *See* Pl.'s Resp. SMF ¶ 53. According to Mahone, without a reasonable accommodation, plaintiff was not authorized to travel by car, *see* Combined Email String at 59, and, in any event, even if plaintiff had a valid reasonable accommodation for travel by car, her travel still could not have extended beyond authorized travel dates, Mahone Decl. ¶ 131.

Plaintiff submitted and Dawson signed a cost comparison "but [Dawson] did not provide . . . Mahone a copy."  Def.'s Mem., Ex. 16 (Report of Investigation, Agency Case Number HS-FEMA-02350-2017, "2017 ROI") at Bates 000121, ECF No. 42-18; *see* Pl.'s Opp'n, Ex. 9 (cost comparison), ECF No. 45-10.  Dawson signed the cost comparison mistakenly "assum[ing] the dates [of plaintiff's travel] were within the . . . guidelines [she] had given" to all staff.  Def.'s Mem., Ex. 12, Decl. of Mary Dawson, DSA Branch Director ("Dawson Decl.") ¶ 67, ECF No. 42-14.  FEMA ultimately paid plaintiff's travel voucher in full, *see* Pl.'s Opp'n, Ex. 3 ("Pl.'s Dep.") at 52:9, ECF No. 45-4, even though it included travel on Saturday, December 24 and Sunday, December 25, 2016, and did not indicate a reasonable accommodation number, *see* Notice of Termination at 2.

Dawson informed Mahone that plaintiff did not complete her travel by December 23, 2016, as instructed.  Mahone Decl. ¶¶ 129-30; Dawson Decl. ¶ 76.  Mahone put plaintiff on non-deployment status in FEMA's Deployment Tracking System on January 27, 2017.  *See* Mahone Decl. ¶¶ 114, 116.  Meanwhile, supervisors reviewed the situation and considered whether to take disciplinary action, *see id.* ¶¶ 113, 116-17, "because of [p]laintiff's non-compliance when demobilizing from [DR-4291-VA]," Def.'s SMF ¶ 55 (internal quotation marks omitted).

9

Placement on non-deployment status is not itself a disciplinary measure, but rather ensures that FEMA does not deploy a Reservist for whom disciplinary action is contemplated before a decision is made. *See* Mahone Decl. ¶¶ 116-17.

### 4. Plaintiff's Termination

FEMA brought two disciplinary charges against plaintiff.  A Reservist is not entitled to advance notice of termination, *see* Def.'s Mem., Ex. 14, Decl. of Kelley Pellici, Director of Employee Services ("Pellici Decl.") ¶ 30, ECF No. 42-16, and, presumably, FEMA brought charges and issued the Notice of Termination simultaneously.

Charge 1, titled "Failure to Follow Instructions," was based on the "Specification" that "[o]n or about December 24, 2016, [plaintiff] failed to follow instructions when [she] ignored direction of [her] supervisor, Mary Dawson, who instructed that . . .  travel must be completed by Friday, December 23, 2016."  Notice of Termination at 1.  Charge 2, titled "Failure to Follow Written Agency Policy," was based on the "Specification" that "[o]n or about December 23-24, 2016, [plaintiff] failed to comply with written agency policy when [she] drove from Norfolk, VA to Dallas, TX in a government rental car without prior approval and without conducting the required cost comparison analysis."  *Id.*  In determining a penalty for plaintiff's conduct, FEMA took into account the following four factors:

> 1.  You were previously reprimanded for failure to follow instructions regarding demobilization on October [25], 2016.
>
> 2. You failed to meet FEMA Reservists' Conditions of Employment which state that you must travel in the "most expeditious and cost effective manner."
>
> 3. Your actions are in direct violation of the FEMA Travel Policy Manual 122-1-1, dated September 23, 2015.
>
> 4. On December 13, 2016, you were given specific instructions by Mary Dawson to complete all travel no later than December 23, 2016.

*Id.* at 3.

For plaintiff's failure to follow instructions, FEMA terminated plaintiff, effective February 13, 2017, and provided her written notice on that same date.  Def.'s SMF ¶ 56.  The Notice of Termination set forth specific instructions for an appeal, noting that plaintiff was "appointed to a position under the Robert T. Stafford Disaster Relief and Emergency Assistance Act" and therefore her appointment was "excluded from the provisions of Title 5 of the United States Code and its accompanying regulations under Title 5 of the Code of Federal Regulations." Notice of Termination at 3.  At the same time, "[h]owever, FEMA [extended to plaintiff] the opportunity to appeal this decision to Faye Green, Cadre Management and Training Branch Chief, Individual Assistance Division, Recovery Directorate," with further directions, "[i]f [she] wish[ed] to appeal this decision," she could "do so in writing no later than 5:00 p.m. (local time of Ms. Green) on the fifth calendar day after [she] receive[d] this notice.  [The] appeal must be sent to Ms. Green either by mail to 500 C Street SW, Washington, DC 20472 or via email[.]" Ms. Green [would] issue a final and binding decision." *Id.*

Plaintiff did not submit an appeal to Green.  Def.'s SMF ¶ 59; *see* Def.'s Mem., Ex. 7, Decl. of Bellance (Faye) Green ("First Green Decl.") ¶¶ 146-48, 151, ECF No. 42-9.  Instead, in "mid-March 2017 [plaintiff] sent an email to FEMA's Human Capital Helpdesk concerning the specifications of her termination," First Green Decl. ¶ 149, as well as an email "to multiple FEMA Leaders (other than Faye Green)," Mahone Decl. ¶ 150; *see* Def.'s SMF ¶ 58, including the then-Acting FEMA Administrator, *see* Nadeau Decl. ¶ 12.  An email message to these FEMA managers "was not [plaintiff's] official appeal," the procedure for which "was provided in her removal letter."  Pellici Decl. ¶ 17.

On March 31, 2017, plaintiff contacted Green by email requesting an extension of time for an appeal of her termination, *see* First Green Decl. ¶¶ 152, 154-55, which extension was denied since the request "was more than 45 days past the deadline," *id*. ¶ 155.

Notwithstanding plaintiff's failure to file a timely appeal to Green, "Human Capital . . . reviewed the case[.]"  *Id*. ¶ 151.  Plaintiff submitted several documents to the Human Capital Helpdesk including a copy of the cost comparison signed by plaintiff and Dawson on December 22, 2016.  *See* 2017 ROI at Bates 000122.  Upon learning that the cost comparison had been done but simply not provided to Mahone, *see id*., FEMA acknowledged its error, and Charge 2 "for failure to follow written agency policy relating to the cost-comparison statement [was] removed from agency records," Def.'s SMF ¶ 59; *see* First Green Decl. ¶ 149.  On March 16, 2017, FEMA notified plaintiff of the decision to remove Charge 2.  Def.'s SMF ¶ 59.

Charge 1 for "failure to follow the instructions of . . . Mary Dawson, who provided specific instructions . . . to complete all travel no later than December 23, 2016, [was] not . . . reversed."  Pellici Decl. ¶ 28 (emphasis removed); *see* Def.'s SMF ¶ 59.  According to Mahone, removal of Charge 2 did not render plaintiff's termination improper, given the prior disciplinary action that plaintiff had "not follow[ed] directions and had been previously reprimand[ed] for similar action in less than a year."  Mahone Decl. ¶ 139.  Additionally, plaintiff had not filed a proper appeal of her termination to Green in accordance with the explicit directions given. Def.'s SMF ¶ 59.

### 5. Post-Termination Employment Applications

Following her termination on February 13, 2017, plaintiff applied for various jobs with FEMA and a FEMA contractor without success, leading to the two challenged actions in this lawsuit, as described below.

***(a) Plaintiff's Non-selection for Housing Inspector Position with FEMA Contractor After August 22, 2017 Unfitness Determination***

FEMA awarded a contract to WSP USA Inspection Services ("WSP") for disaster assistance in Texas and Louisiana following Hurricane Harvey. *Id.* ¶ 80. Plaintiff applied for and was selected, on June 19, 2017, "to proceed with the process of becoming a disaster inspector with WSP[.]" *Id.* ¶ 81; *see* 2017 ROI at Bates 000171. This "tentative offer was contingent on an 'on-boarding and security process' that involved FEMA making a 'favorable or unfavorable' determination." Def.'s SMF ¶ 81. "Only favorably adjudicated candidates would be retained to perform disaster housing inspections," *id.*, and the determination would be made "in accordance with the guidance found in 5 CFR 731 *or its equivalent* and the Suitability Process Handbook issued by [the Office of Personnel Management]," *id.* ¶ 85 (emphasis added).

As part of that on-boarding process, on July 6, 2017, FEMA's Personnel Security Division ("PSD") received from the Contracting Officer's Representative for FEMA's Housing Inspection Services a request to process plaintiff's application as a contract Field Inspector. Nadeau Decl. ¶ 6. "Plaintiff completed E-Quip paperwork in connection with the WSP tentative job offer and security investigation." Def.'s SMF ¶ 82. Among other documents, plaintiff completed a Declaration for Federal Employment (OF306) on July 7, 2017. Nadeau Decl. ¶ 6; *see* 2017 ROI at Bates 000173-74. Question 12 asked whether in the preceding five years plaintiff had been fired from any job for any reason. *See* 2017 ROI at Bates 000174. Plaintiff answered affirmatively, "disclosed her termination from FEMA," Def.'s SMF ¶ 83, and "claimed that the . . . termination [was] not valid," Nadeau Decl. ¶ 6.

This response flagged plaintiff's application, resulting in its referral "to adjudication" and assignment to Personnel Security Specialist Gina Helms. Def.'s SMF ¶ 84; *see* Nadeau Decl. ¶ 6. Although termination alone would not have disqualified an applicant, "Personnel Security

13

Specialists [would] look at instances of 'Misconduct and Negligence' as well as 'patterns in conduct and recency of the conduct or termination.'"  Def.'s SMF ¶ 86.

### (i) Plaintiff's Response to Letter of Interrogatory

On July 25, 2017, Helms emailed plaintiff a letter of interrogatory ("LOI") informing plaintiff of the background investigation being conducted "to determine [her] suitability for entry on duty (EOD) as a contract employee with FEMA."  2017 ROI at Bates 000176.  Helms requested additional information about the circumstances of plaintiff's termination, *see* Def.'s SMF ¶¶ 87-88, including the following questions, to which plaintiff's responses are reflected in bold:

> 2.     Were you aware of the policy prior to your travel?  **Yes, and followed it, Supervisor did not asked** [sic]**, just accused**
>
> 4.     Do you have any documentation and/or email correspondence related to this termination?  If so, please provide a copy.  **Yes**
>
> 6.     Did this/these terminations involve any misconduct, negligence, policy violation, etc. on your part?  **NO, I was falsely accused of not following Travel Policy, once provided evidence it was reversed.**
>
> 10.    Were there any other episodes of misconduct or negligence?  **NO misconduct or negligence, I was falsely accused**
>
> 11.    Please provide any paperwork you have regarding the incident and termination of employment.  **Please see attached**

2017 ROI at Bates 000176-177.  Attached to plaintiff's LOI response were a narrative explanation for her termination, *see id.* at Bates 000156-157, copies of previous performance evaluations, *see* Nadeau Decl. ¶ 7, and various email messages, *see* 2017 ROI at Bates 000157-170.  Plaintiff's response did not include copies of her termination letter or any other correspondence from FEMA pertaining to her termination.  Nadeau Decl. ¶ 8.

Among the email messages plaintiff submitted to Helms was a June 30, 2017, email from James Montgomery, Acting Chief of FEMA's Office of Equal Rights that summarized

Montgomery's telephone conversation with plaintiff regarding her concerns about her termination and referenced Montgomery's suggestion that mediation potentially could address those concerns. *See* 2017 ROI at Bates 000169-170. On August 16, 2017, plaintiff sent an email to Helms indicating that a "mediation [session had been] scheduled for the end of Aug[ust] in an attempt to clear [her] name." *Id.* at Bates 000104.

### (ii) August 22, 2017 Adjudication of Fitness for Employment with FEMA Contractor

Helms reviewed the materials provided by plaintiff with her LOI response. *See* Nadeau Decl. ¶ 8. Plaintiff's fingerprint card, which would have indicated plaintiff's race, was in the file to which Helms had access. *See* 2017 ROI at Bates 000063-064. Although Helms could have determined plaintiff's race from the fingerprint card, Helms stated that she did not "ever look at that particular information when checking the fingerprint results." *Id.* at Bates 000064; *see* Def.'s SMF ¶ 95.

Plaintiff's failure to submit a copy of the termination letter "required . . . Helms to further the fitness inquiry/investigation by other means, a process that aligns with existing DHS policy." Nadeau Decl. ¶ 14. Helms consulted Nadeau, who instructed Helms "to contact [FEMA's Labor and Employee Relations office ('LER')] to obtain further information on the termination action." *Id.* ¶ 8.

On August 15, 2017, Helms contacted Robyne Jackson at LER who indicated that plaintiff also had received an Official Reprimand in October 2016, an incident that plaintiff had not disclosed, Nadeau Decl. ¶ 9, either on the OF306 or her responses to the LOI. Helms requested, and LER provided, copies of plaintiff's Notice of Termination and Official Reprimand "for Inappropriate Conduct and Failure to Follow Instructions related to refusal to attend meetings and demobilization requirements." *Id.* ¶ 11. The Official Reprimand's reference to

"demobilization" was described as "a travel related issue." *Id.* The Official Reprimand also

"cited a verbal counseling administered [to plaintiff] on August 31, 2016, for inappropriate and

unprofessional emails." *Id.* Although plaintiff supplied "extensively detailed information to

challenge the grounds of her . . . termination, she never acknowledged the previous disciplinary

actions, never cited any objection to those charges [and she offered no] information to refute

them." *Id.* ¶ 16. PSD construed plaintiff's post-termination election to contact FEMA's Acting

Administrator, rather than to pursue an appropriate appeal to Faye Green within the allotted five-

day period, as another demonstration of her "disregard for written policy[.]" *Id.* ¶ 12.

"An in-depth review of all available information and documentation received and/or

obtained by . . . PSD . . . in the July – August 2017 timeframe, resulted in a final unfavorable

hiring determination." *Id.* ¶ 13. On August 21, 2017, Helms found that plaintiff did not "meet

the fitness requirements to work on a FEMA contract," 2017 ROI at Bates 000113, having

focused on misconduct as the relevant suitability factor, *see id.* at Bates 000111-113. Helms

concluded as follows:

> It appears [plaintiff's] 2/2017 termination from FEMA involved
> misconduct/negligence, as [she] failed to follow written instructions
> by not completing all travel by 12/23/2016. Although [she] had
> been given a written reprimand on 10/26/2016, for Failure to Follow
> Instruction and Inappropriate Conduct, she claims she had not been
> aware of the FEMA Travel Policy. This was the subject's third
> infraction (one verbal and two written) which indicates a pattern of
> behavior. [Plaintiff] further demonstrates her disregard for written
> policy during the appeal of her termination by exceeding the 5 day
> deadline and not submitting the appeal to the appropriate department
> (as outlined in her termination letter). Due to these reasons,
> [plaintiff's] actions and the recency of the termination, this issue
> remains a concern and cannot be mitigated at this time.

*Id.* at Bates 000113 (emphasis removed); *see* Def.'s SMF ¶ 92. Helms' superiors concurred. *See*

*id.* at Bates 000114. By letter, dated August 22, 2017, PSD advised plaintiff that she had been

found "unfit for assignment as a contractor employee with [FEMA]."  Def.'s SMF ¶ 93; *see* 2017 ROI at Bates 000137.

Plaintiff had an opportunity to provide Helms documents related to her termination yet did not provide a copy of the Notice of Termination.  Nadeau Decl. ¶ 14.  This omission "was viewed as potentially . . . purposely with[holding]" information.  *Id.*  According to Nadeau, that Helms "obtained the information independent of [plaintiff] in no way created a requirement for . . . Helms to contact [plaintiff] again for further rebuttal as there was no additional right or entitlement created as a result of PSD's validation of the grounds for termination which included a . . . reprimand 30-days prior."  *Id.* ¶ 15.  Further, even if plaintiff had provided "information related to the Official Reprimand in her LOI response[] . . . PSD would not have had the discretion to disagree with or overturn a disciplinary decision made by LER in regard to employee conduct."  *Id.* ¶ 17.

### (b) Plaintiff's Non-selection for FEMA Local Hire Customer Services Representative Position After November 1, 2017 Ineligibility Determination

In July 2017, plaintiff responded to a vacancy announcement, FEMA-17-NPSC-TX-LH, for a local hire Customer Services Representative position.  Def.'s SMF ¶ 100.  FEMA extended a tentative offer of employment subject to a background investigation.  *Id.* ¶ 101.

PSD received a request on September 12, 2017, to process plaintiff's application for this position supporting FEMA's response to Hurricane Harvey.  Nadeau Decl. ¶ 19.  As such, the process qualified as "[d]isaster hiring . . . conducted under expedited protocols supported by an Emergency Waiver issued by DHS due to the nature of FEMA Response and Recovery requirements at the onset of a disaster."  *Id.*  In this circumstance, a reviewer makes "a straight-forward pass or fail decision based on . . . the applicant's responses on the OF306," among other documents.  *Id.*  "Under expedited hiring procedures, there was no requirement to reach out to

the applicant for any information regarding her termination." *Id.* When PSD received the matter, the information in plaintiff's file, notably the August 22, 2017, unfitness determination, was less than 30-days old. *Id.* ¶ 20.

Pia Warrington was assigned to this matter. *Id.* Based on plaintiff's disclosure of her termination on the OF306 signed on September 9, 2017, Warrington found plaintiff "ineligible for hiring and denied [her application] during this screening process due to her recent termination and the unfavorable hiring determination a month prior as there had not been sufficient passage of time to substantiate rehabilitation as required under mitigation standards[.]" *Id.*[4] Consequently, FEMA withdrew its tentative employment offer. Def.'s SMF ¶ 102. Plaintiff was notified by email from Nirali Mehta, an Office of Chief Component Human Capital Officer, on November 1, 2017. *Id.*; *see* 2017 ROI at 000091-092.

### (c) Plaintiff's Non-Selection For Other FEMA Positions In 2017 – 2019

According to plaintiff, between July 2017 and October 2018, she was found qualified but was not selected for the following five positions: Individual Assistance Reservist, Disaster Field Training Operations training specialist, Logistics Systems Specialist, Emergency Management Specialist, and Administrative Support Assistant. *See* Pl.'s Statement of Facts Precluding Summ. J. ("Pl.'s SMF") ¶¶ 15-17, 39-41, ECF No. 45-1; *see generally* Pl.'s Opp'n, Ex. 7 (Email messages), ECF No. 45-8. She was notified on July 3, 2019, that her application for a sixth position did not advance to a hiring official for further consideration. *See* Pl.'s SMF ¶ 42.

---

[4]     On September 12, 2017, in error, Warrington entered a comment in the file that August 22, 2017, was the date of plaintiff's termination. Nadeau Decl. ¶ 21. The error has been corrected. *See id.* ¶ 23.

Plaintiff attributed her lack of success with these applications to FEMA's "reli[ance] on . . . Helms' suitability determination."  Pl.'s Opp'n at 9.

### (d) Plaintiff's Selection and Employment As A FEMA Administrative Support Assistant in May 2019

Plaintiff responded on an unknown date to vacancy announcement FEMA-19-JMB-256852-CORE for an Administrative Support Assistant position.  Def.'s Mem., Ex. 19 (Email from Krissie Gilroy dated January 4, 2019), ECF No. 42-21.  The position was a two-year temporary Excepted Service appointment in FEMA's Cadre of On-Call Response and Recovery Employee (CORE) program.  Nadeau Decl. ¶ 24.  By that time, plaintiff's "previous background investigation had exceeded its serviceable 5-year age limit," and plaintiff "had had a 2-year break in service[.]"  Id. ¶ 25.  For these reasons, FEMA required plaintiff "to submit to a new, full background investigation."  Id.

PSD received the request to process plaintiff's case on February 7, 2019, id. ¶ 24, and assigned James Abell to adjudicate this matter, id. ¶ 26.  Abell contacted Robyne Jackson at LER to determine "whether any new information had been added to [plaintiff's] file since her termination on February 13, 2017."  Id.  Jackson "advised that the charges and specifications had been amended to remove [Charge 2 for] Failure to Follow Agency Policy," id., and an amended Notice of Termination had been issued, see id., Ex. 8 (amended Notice of Termination).[5]

"After verifying all factors related to the case . . . Abell [concluded] that there was no new, relevant information requiring further consideration and [no need] to request additional information from [plaintiff]."  Id. ¶ 27.  Abell determined that the conduct contributing to plaintiff's February 13, 2017, termination no longer rose "to the level of serious or

---

[5]     The amended Notice of Termination, which omits all references to Charge 2, bears its original date of February 13, 2017.  See Nadeau Decl., Ex. 8 at 1.

disqualifying," noting that more than two years had passed since termination, thereby

establishing "sufficient rehabilitation."  *Id.*  Plaintiff has been employed as a FEMA

Administrative Support Assistant since May 12, 2019.  Def.'s SMF ¶ 104.

### 6. Plaintiff's 2017 EEO Charge

On August 22, 2017, plaintiff contacted FEMA's Office of Equal Rights, and on October

22, 2017, she filed a formal employment discrimination complaint ("2017 EEO Charge").  Def.'s

SMF ¶ 96.  The following three claims were accepted for investigation to determine "[w]hether

[plaintiff] was discriminated against and subject to disparate treatment on the basis of race

(African-American) and retaliation (prior EEO activity 2016) when":

> 1.      In June 2017 [plaintiff] applied for several Cadre positions
> and was selected but the offers were withdrawn later because of the
> unsuitability determination by FEMA Office of Chief Security
> Officer based on her previous termination from FEMA;
>
> 2.      On August 22, 2017 [plaintiff] was not selected for a
> contract position when she was determined to be unsuitable by the
> FEMA Office of Chief Security Officer because she was previously
> terminated from FEMA.
>
> 3.      On September 29, 2017 [plaintiff] learned that she was
> treated differently than a similarly situated White female supervisor
> who was not disciplined for actions for which [plaintiff] previously
> was reprimanded and terminated.

*Id.* ¶ 97.  On or about March 16, 2018, EEO Investigator Paul J. Benkert was assigned to the

matter.  *See* 2017 ROI at Bates 0000003.

On April 12, 2018, plaintiff forwarded to Benkert Mehta's November 1, 2017 email

informing her that she was ineligible for hire under disaster hiring procedures.  *Id.* at Bates

000091.  Plaintiff testified that the November 1, 2017, ineligibility determination was "supposed

to be part of" the investigation of her 2017 EEO Charge, Pl.'s Dep. at 27:25, and that she

"reported it to the equal rights office," *id.* at 27:15, specifically "[t]o Erik Skinner, James

Montgomery [and] Donna Peterkin," *id.* at 27:17.  Benkert concluded his investigation on May

25, 2018.  *See* 2017 ROI at Bates 000003.

###   B.      PROCEDURAL HISTORY

FEMA's investigation of the 2017 EEO Charge was not timely completed and,

consequently, on May 8, 2018, plaintiff was advised of her right either to request a hearing

before an Administrative Law Judge or to file a civil action in federal district court.  Def.'s SMF

¶ 99; *see* Def.'s Mem., Ex. 18, ECF No. 42-20.  Plaintiff opted to file this civil action.

On August 17, 2018, plaintiff, proceeding *pro se* and *in forma pauperis*, filed her original

complaint in the United States District Court for the Northern District of Texas.  *See* Complaint,

ECF No. 1.  She amended the complaint on September 13, 2018.  *See* Amended Complaint

("Am. Comp."), ECF No. 7.  After the case was transferred to this Court in September 27, 2018,

*see* Transfer Order, ECF No. 10, discovery commenced, pursuant to a scheduling order, entered

consistent with the schedule proposed by the parties, *see* Joint Local Rule 16.3 Meet and Confer

Report, ECF No. 22; Scheduling Minute Order (March 26, 2019); Minute Orders (May 10, 2019,

August 16, 2019) (extending discovery).  After plaintiff's counsel entered an appearance on

August 28, 2019, *see* Appearance of Counsel, ECF No. 33, the discovery period was further

extended until March 20, 2020, *see* Minute Orders (October 2, 2019, February 26, 2020).  After a

year of discovery, FEMA's summary judgment motion was fully briefed as of December 21,

2020, when plaintiff filed a surreply, ECF No. 53.  The pending motion is now ripe for

resolution.

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the "absence of a genuine issue of material fact" in dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on summary judgment, appropriate inquiry is "whether, on the evidence so viewed, 'a reasonable jury could return a verdict for the nonmoving party'" (quoting *Liberty Lobby*, 477 U.S. at 248)).  A court considering a motion for summary judgment evaluates all underlying facts and inferences in the light most favorable to the nonmovant, *Liberty Lobby*, 477 U.S. at 255, and "eschew[s] making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

## III.    DISCUSSION

Plaintiff's amended complaint alleges race discrimination and retaliation when FEMA adjudicated her unfit for employment with contractor WPS on August 22, 2017, and found her ineligible for a local hire Customer Service Representative position, resulting in withdrawal of its tentative job offer on November 1, 2017.  FEMA moves for summary judgment on plaintiff's claim regarding the August 22, 2017, fitness determination on the ground that a reasonable nondiscriminatory reason justified this determination: namely, that plaintiff did not pass its background investigation.  As to the withdrawal of the job offer on November 1, 2017, FEMA moves for summary judgment on the ground that plaintiff failed to exhaust her administrative remedies prior to filing this lawsuit.  Each argument is addressed *seriatim*.

**A. August 22, 2017 Adjudication of Fitness for Employment with FEMA Contractor**

**1. The Parties' Evidentiary Burdens**

"Discrimination and retaliation claims supported by circumstantial evidence are evaluated under the burden-shifting framework of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)." *Chambers v. District of Columbia*, No. 19-7098, 2021 U.S. App. LEXIS 4787, at *5 (D.C. Cir. Feb. 19, 2021) (citing *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015)); *see Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019).  Plaintiff's first task is to establish a *prima facie* case of discrimination, *see id.*, by alleging that "she is part of a protected class under Title VII, she suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination."  *Id.* (quoting *Walker*, 798 F.3d at 1091).  "Once the plaintiff clears that hurdle, the 'burden shifts to the employer to identify the legitimate, non-discriminatory or non-retaliatory reason on which it relied in taking the complained-of action.'" *Id*.  The employer's burden is only one of production, and it "need not persuade the court that it was actually motivated by the proffered reasons."  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  The "issue is not the correctness or desirability of [the] reason[] offered . . . [but] whether the employer honestly believes in the reason[] it offers."  *Fischbach v. District of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  If the "employer's stated belief about the underlying facts is reasonable in light of the evidence . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts."  *Brady*, 520 F.3d at 495.

Once the employer successfully carries its burden of production, "the *McDonnell Douglas* framework — with its presumptions and burdens — is no longer relevant."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993).  Instead, "the plaintiff, to defeat summary

23

judgment, must produce sufficient evidence for a reasonable jury to find that the employer's

asserted nondiscriminatory or non-retaliatory reason was not the actual reason and that the

employer intentionally discriminated or retaliated against the employee." *Chambers*, 2021 U.S.

App. LEXIS 4787, at *6 (internal citations and quotations omitted).

Similarly, when plaintiff raises a retaliation claim, "the central question at summary

judgment becomes whether the employee produced sufficient evidence for a reasonable jury to

find that the employer's asserted nondiscriminatory or non-retaliatory reason was not the actual

reason and that the employer intentionally discriminated or retaliated against the employee."

*Walker*, 798 F.3d at 1092 (citations and internal quotation marks omitted).  "[S]ufficient

evidence may include, *inter alia*, (1) the plaintiff's *prima facie* case; (2) any evidence the

plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any

further evidence of discrimination that may be available to the plaintiff (such as independent

evidence of discriminatory statements or attitudes on the part of the employer)."  *Hampton v.*

*Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012) (citations and internal quotation marks omitted).

### 2. FEMA's Proffered Legitimate Non-Discriminatory Reason

For purposes of this motion, FEMA has assumed that plaintiff can prove a *prima facie*

case of race discrimination and retaliation.  *See* Def.'s Mem. at 18.  FEMA attributed the August

22, 2017, unfavorable fitness determination to plaintiff's failure to meet a prerequisite:

"pass[ing] a FEMA-conducted background check."  *Id.*  FEMA concluded that plaintiff's

February 13, 2017, termination involved misconduct, namely, "fail[ure] to follow written

instructions by not completing all travel" by December 23, 2016, as Dawson instructed.  *Id.* at

19.  Termination was plaintiff's third disciplinary infraction, thus comprising a "pattern of

behavior."  *Id.*  PSD conducted its adjudication within six months of plaintiff's termination, and

"because of the recency of her . . . termination and the nature of the conduct" underlying the termination, FEMA found she "posed a risk that [PSD] determined, based on [its] standard guidance, [which] could not be adequately mitigated." *Id.* at 19.  Consequently, FEMA deemed plaintiff unfit for hire with the contractor.

### 3. Plaintiff's Rebuttal

Plaintiff "bears the ultimate burden of proving that discriminatory animus was the determining or but-for cause of the personnel action." *Ford v. Mabus*, 629 F.3d 198, 201 (D.C. Cir. 2010) (citing *McDonnell Douglas*, 411 U.S. at 803–05).  She not only must show that the employer's reason is false, but also "discrimination [or retaliation is] the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515.  Plaintiff attacks the thoroughness of the adjudication and methodology used by Helms to reach her conclusion.[6]  As support, plaintiff posits several grounds for rebuttal of the legitimate, nondiscriminatory reasons for FEMA's fitness determination but, even considered together, these grounds are insufficient.

---

[6]    Plaintiff's contention that the adjudication should have, and failed to, comply with FEMA's obligations under 5 C.F.R. § 731, *see* Pl.'s Opp'n at 10, 12, including a duty to ensure the accuracy, relevance, timeliness and completion of the records on which it relies, 5 C.F.R. § 731.103(e)(1), and to "consider all available information in reaching its final decision on a suitability determination," 5 C.F.R. § 731.103(e)(3), is misplaced.  "Stafford Act temporary or term disaster-related positions," such as the positions plaintiff held and for which she applied, "are not subject to the provisions of 5 C.F.R. Part 731 in regard to determining suitability (or fitness) for federal service to include the Due Process rights therein," Def.'s Reply at 8; *see* Nadeau Decl. ¶ 31.  Instead, the positions for which plaintiff was denied selection are subject to the DHS Instruction 121-01-007-01, *see* Nadeau Decl. ¶ 31, the relevant section of which does not incorporate 5 C.F.R. § 731.103, *see* DHS Instruction at 20-21.  Although plaintiff faults FEMA and Helms for failing to declare that the August 22, 2017, determination had been made under any standard other than 5 C.F.R. § 731, *see* Pl's Surreply at 2, the record makes clear that suitability determinations are made under 5 C.F.R. § 731 *or equivalent*, *see* 2017 ROI at Bates 000109, which equivalent is DHS Instruction 121-01-007-01.  In any event, under either set of criteria, misconduct is a permissible factor to consider, *see* DHS Instruction at 21; 5 C.F.R. § 731.202(b), as it was here.

First, plaintiff contends that Helms failed to consider "all available information" when adjudicating her fitness for employment. Pl.'s Opp'n at 12. For example, plaintiff points to her August 16, 2017, email to Helms with its offer to provide additional information about her termination. *See id.* This email, she states, also advised Helms of a then-upcoming "mediation to 'clear her name.'" *Id.* Plaintiff faults Helms for declining her offer, obtaining copies of the Official Reprimand and Notice of Termination from LER instead, *see id.*, and relying on the Official Reprimand without offering her an opportunity to respond to it, *see id.* at 13-14. In another example, plaintiff contests Helms' statement, *see* 2017 ROI at Bates 000111, that plaintiff provided no evidence of having obtained prior authorization to travel after December 23, 2016, or to travel by car. *See id.* at 16. In support, plaintiff points to her narrative statement responding to the LOI, *see* 2017 ROI at 000121-122, and various email messages, *see id.* at 000132-134, among which is Dawson's December 24, 2016, email instructing plaintiff to "[c]ontinue with travel," 2017 ROI at 000131, notwithstanding Dawson's prior instruction to complete travel by December 23, 2016. In short, plaintiff's critique of Helms's decision is that she not only acquired information about plaintiff's termination from an alternative source, but also ignored relevant information plaintiff herself submitted.

FEMA responds that plaintiff had an opportunity to provide information about her termination and she also availed herself of that opportunity by responding to the LOI. *See* Def.'s Reply at 9. Her response appeared to be incomplete, however. Questions 6 and 10 of the LOI asked whether her termination involved misconduct, and whether there were other episodes of misconduct, and plaintiff responded, "NO." *See* 2017 ROI at 000116. Plaintiff surely was aware of her Official Reprimand and its contents, particularly its reference to the August 31, 2016, verbal counseling. Neither the OF306 nor plaintiff's LOI response disclosed any discipline

imposed prior to termination, and contrary to her LOI response, plaintiff failed to submit a copy of her Notice of Termination.

Plaintiff does not counter FEMA's assertion that the omissions from the LOI response "required . . . Helms to further the fitness inquiry/investigation by other means, a process that aligns with existing DHS policy," by obtaining the relevant information from LER.  Nadeau Decl. ¶ 14.  Nor does plaintiff respond to FEMA's proffer that obtaining information from LER rather than plaintiff "in no way created a requirement for . . . Helms to contact [plaintiff] again for further rebuttal as there was no additional right or entitlement as a result of PSD's validation of the grounds for termination" occurring so soon after an Official Reprimand.  *Id.* ¶ 15.  Thus, contrary to plaintiff's assessment, Helms did consider plaintiff's submitted materials but found those submissions deficient due to other materials diligently obtained as part of the suitability review process.

Second, plaintiff faults Helms for accepting the termination at face value, without delving into the substance of the underlying disciplinary charges and the merits of plaintiff's purported appeal.  *See* Pl.'s Opp'n at 11-12.  For example, she contends that Helms ignored "obvious contradictions" about the termination and appeal.  *See id.* at 11.  By contradictions, plaintiff means FEMA's decisions, in effect, to entertain an appeal of Charge 2 without also reconsidering Charge 1, and to remove Charge 2 while allowing Charge 1 to stand.  In plaintiff's view, the same evidence – the cost comparison approved by Dawson – undermines both Charge 1 and Charge 2.  *See id.* at 12.  If Dawson approved the cost comparison reflecting that plaintiff's travel would end on December 26, 2016, and if Charge 1 is based on plaintiff's failure to complete travel by Friday, December 23, 2016, as instructed, plaintiff argues that Charge 1 should have been removed also, notwithstanding her failure to file a proper and timely appeal to Green.

Plaintiff proceeds as if PSD's adjudication of fitness for employment with a contractor operates as a belated appeal of her termination.  As discussed above, the record of this case demonstrates that plaintiff was given instructions for appealing her termination and that she simply failed to comply.  Plaintiff's email messages to various FEMA officials are not a substitute of a proper and timely appeal to Green.  *See* Pellici Decl. ¶ 17; *see* Def.'s SMF ¶ 59. FEMA also demonstrates, *see* Mahone Decl. ¶ 139, without rebuttal from plaintiff, that Charge 1 alone supports termination.  Insofar as plaintiff relies on the cost comparison statement approved by Dawson as evidence discrediting Charge 1, her reliance is misplaced.  She does not dispute FEMA's factual proffer that "[a] signed cost-comparison statement has no bearing on the date by which all travel must [be] completed."  Def.'s SMF ¶ 61.  Furthermore, neither Helms nor PSD has the "discretion to disagree with or overturn a disciplinary decision made by LER in regard to employee conduct."  Def.'s Reply at 10 (quoting Nadeau Decl. ¶ 17).

Third, plaintiff argues that her response to the LOI alone establishes that "her hire would be consistent with successful performance," such that she should have been "adjudicated as fit for employment."  Pl.'s Opp'n at 14.  She points to her years' long work history with FEMA, her qualifications for the housing inspector position, past satisfactory performance evaluations, and candid cooperation with Helms' investigation.  *See id.*  Additionally, plaintiff discounts the significance of her termination, noting that her appeal had not been decided on the merits.  *Id.*  In this circumstance, she argues, the information at Helms' disposal "provide[s] no support for a finding that [plaintiff] had a . . . problematic 'pattern of behavior[.]'"  *Id.* at 15.  This supposed pattern of behavior, she notes, did not dissuade Abell from declaring her fit for FEMA employment in 2019, thereby "suggest[ing] that the reasons for failing to hire her previously were pretextual."  *Id.*

Regardless of plaintiff's qualifications and past satisfactory performance, FEMA demonstrates that an applicant's "ability to satisfactorily perform her work has no relationship or influence on fitness for duty wherein conduct is at issue." Nadeau Decl. ¶ 7. Nor does plaintiff demonstrate that Abell's favorable fitness determination in 2019 betrays an improper motive on FEMA's part in its unfitness determination in 2017.

By the time plaintiff applied for her current position, she was required to undergo a new, full background investigation with which she complied by, among other things, providing "unsolicited information regarding her previous termination." Nadeau Decl. ¶ 25. Plaintiff's personnel records remained unchanged, and her termination based on Charge 1 stood. *See id.* ¶ 26. Nevertheless, given the lapse of time between termination in February 2017 and fresh background investigation in January 2019, and upon Abell's belief that the conduct giving rise to her termination no longer was disqualifying, plaintiff survived the pre-appointment phase. *See id.* ¶ 27. Consequently, FEMA hired plaintiff, and she has been an Administrative Support Assistant since May 12, 2019. Def.'s SMF ¶ 104.

FEMA produces evidence from which a reasonable jury could conclude that it had a legitimate nondiscriminatory reason for declaring plaintiff unfit for appointment as a housing inspector with a FEMA contractor. Its own records show that plaintiff was subjected to discipline three times within a short time period: counseling in August 2016, an Official Reprimand for a travel-related matter in October 2016, and termination arising from another travel-related matter in February 2017. Plaintiff denies having been counseled, but she points only to her own emails and deposition testimony in support. This meager showing does not rebut the record evidence, namely the Official Reprimand, and plaintiff does not show that FEMA's reliance on its own personnel records was improper or otherwise suspect. Further, a

reasonable jury could conclude that plaintiff's conduct, including her misguided attempts to appeal her termination, displayed a pattern of disregard for rules and instructions.

Having considered plaintiff's submission, the Court concludes that she fails to demonstrate that FEMA's proffered legitimate nondiscriminatory reason for its fitness determination is pretext for discrimination.  It is her burden to prove that FEMA's discriminatory animus was the "but for" cause of its fitness determination, and she fails to meet that burden.

### B. November 1, 2017 Withdrawal of Offer for Local Hire Customer Services Representative Position with FEMA

Although plaintiff's Amended Complaint fails to mention her application for the local hire Customer Services Representative position, she argues that FEMA's withdrawal of its tentative job offer properly is before the Court.  *See* Pl.'s Opp'n at 8-9.  FEMA moves for summary judgment on the ground that plaintiff failed to exhaust this claim administratively before filing her lawsuit.  *See* Def.'s Mem. at 16-17.

### 1. Exhaustion of Administrative Remedies

Generally, Title VII requires exhaustion of administrative remedies before a plaintiff may file an employment discrimination action in federal district court.  *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)); *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) ("Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government," a court may not consider a discrimination claim that has not been exhausted in this manner absent a basis for equitable tolling." (quoting *Stewart v. Ashcroft,* 352 F.3d 422, 426 (D.C. Cir. 2003)).  "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations."  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)) (internal citation and quotation marks

omitted); *Payne*, 619 F.3d at 65 (reinforcing *Park* holding insofar as claims in civil suit must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination); *see also Shipman v. Nat'l R.R. Passenger Corp. (AMTRAK)*, 241 F. Supp. 3d 114, 123 (D.D.C. 2017) (citation omitted), *aff'd sub nom. Shipman v. Nat'l R.R. Passenger Corp.*, No. 17-5066, 2017 WL 4217244 (D.C. Cir. Aug. 1, 2017) (noting that if the alleged discriminatory acts are "not articulated in the administrative charge, are not reasonably related to the allegations in the charge, and do not fall within the scope of any administrative investigation that can reasonably be expected to follow, [plaintiff] may not proceed with these additional claims without first exhausting the administrative process." ).

This requirement of administrative exhaustion "serves the important purpose[ ] of giving the charged party notice of the claim and narrow[ing] the issues for prompt adjudication and decision." *Latson v. Holder*, 82 F. Supp. 3d 377, 384 (D.D.C. 2015) (quoting *Park*, 71 F.3d at 907) (internal quotation marks omitted).  It is defendant's burden to plead and prove an affirmative defense such as exhaustion of administrative remedies.  *See Colbert v. Potter*, 471 F.3d 158, 165 (D.C. Cir. 2006) (stating that statute of limitations under Title VII is an affirmative defense which defendant must plead and prove); *Ellison v. Napolitano*, 901 F. Supp. 2d 118, 124 (D.D.C. 2012) ("Because untimely exhaustion of [Title VII] administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it.").

### 2. Plaintiff's 2017 EEO Charge and 2017 ROI

FEMA demonstrates, and plaintiff concedes, that the 2017 EEO Charge included only two non-selection claims: plaintiff's non-selection in June 2017 for Cadre positions, and the unfitness determination in August 2017 resulting in her non-selection by contractor WSP for a housing inspector position.  Def.'s SMF ¶ 97; *see* Def.'s Mem., 2017 ROI at Bates 000029.  The

August 2017 unfitness determination corresponds to the first claim in plaintiff's Amended

Complaint.  *See* Am. Compl. at 5.  Missing from both the 2017 EEO Charge and Amended

Complaint is a claim pertaining to the November 1, 2017 ineligibility determination and the

resulting withdrawal of FEMA's tentative offer for the local hire Customer Services

Representative position.  FEMA argues, then, that plaintiff did not exhaust this claim

administratively before filing this lawsuit.  *See* Def.'s Mem. at 16-17.

       Plaintiff, nevertheless, insists that this claim may properly be considered.  She claims to

have exhausted her administrative remedies "by reporting the unfair adjudication and

nonselection events to the EEO investigator" to whom the 2017 ROI was assigned "at the outset

of the investigation[.]"  Pl.'s Opp'n at 8.  Plus, her deposition testimony reflects her intention to

amend the 2017 EEO charge, *see id*., although she has changed her tune now to argue no formal

amendment of the 2017 EEO Charge is necessary to exhaust the November 1, 2017 claim

"because it was addressed in the investigation and was related to her other nonselection claims in

the complaint[.]"  *Id.* at 9.

       Plaintiff's assertion that the November 1, 2017 claim is addressed in the 2017 ROI is a

stretch too far.  The investigator's summary of plaintiff's testimony merely mentions plaintiff's

receipt of Mehta's November 1, 2017 email notifying her that she had been found ineligible for

the local hire Customer Service Representative position.  *See* 2017 ROI at Bates 000006-007

("She states that she received an email from Nirali Mehta on November 1, 2017, which stated

that Personnel Security had found her ineligible for the Local Hire Customer Service

Representative position under Vacancy Announcement FEMA-17-NPSC-TX-LH.").  Plaintiff

cites no authority for the proposition that an email to an EEO investigator about an *intention* of

amending the then-pending 2017 EEO Charge amounts to the actual amendment of that Charge.

The three matters accepted for investigation do not include the November 1, 2017, claim, *see* 2017 ROI at 000029, and the 2017 ROI's brief reference to it, make apparent that no investigation of the November 1, 2017, determination was undertaken as part of the defined scope of review of plaintiff's formal 2017 EEO Charge.

Plaintiff is no more persuasive in arguing that the November 1, 2017 claim was related to any of the claims actually pled in the Amended Complaint. Plaintiff presumes that Helms' "negative fitness determination" of August 22, 2017 undergirded FEMA's subsequent determinations. Pl.'s Opp'n at 9. For this reason, she claims to have exhausted her administrative remedies "[b]ecause every subsequent nonselection event arose from [that] negative fitness determination, which was explored at length in the 2017 EEO investigation[.]" *Id.* FEMA refutes this presumption, however, by demonstrating that the post-August 2017 decisions, including the November 1, 2017 withdrawal of a tentative job offer, stemmed not from Helms' adjudication but from a "separate and distinct ineligible determination made in September 2017," Def.'s Reply at 5, under expedited hiring procedures for disaster-related positions, *see id.* at 6. Thus, a different reviewer relying on information in plaintiff's file and applying different criteria deemed plaintiff ineligible for the local hire position. In the response that plaintiff was permitted to submit, she offered no further argument on the topic of exhaustion. *See generally* Pl.'s Surreply, ECF No. 58; December 21, 2020 Minute Order (authorizing plaintiff to file surreply).

The Court finds, based on the record presented, that plaintiff did not amend the 2017 EEO Charge to include as part of her discrimination claims the November 1, 2017 ineligibility determination, that the investigator did not include that determination in the 2017 ROI, and that FEMA did not have notice of a discrimination claim arising from the November 1, 2017

determination asserted against it.  Thus, plaintiff did not exhaust her administrative remedies regarding the November 1, 2017 ineligibility determination and resulting withdrawal of FEMA's tentative job offer.

Accordingly, the Court grants summary judgment in FEMA's favor on the November 1, 2017 claim for failure to exhaust this claim in administrative proceedings first.  *See, e.g.*, *Pickett v. Brennan*, No. 19-5170, 2020 WL 873526, at *1 (D.C. Cir. Feb. 13, 2020) (per curiam) (granting summary affirmance of dismissal of Title VII claim where appellant had not shown he had exhausted administrative remedies); *Amiri v. Securitas Sec. Servs. USA, Inc.*, 608 F. App'x 15 (D.C. Cir. 2015) (affirming dismissal of Title VII claim because plaintiff had not presented the claim in his administrative charge); *see also Tapp v. Wash. Metro. Area Transit Auth.*, 283 F. Supp. 3d 1, 6 (D.D.C. 2017) (concluding that plaintiff's "visit to an EEOC office and his conversation with an EEOC employee are not a substitute for the statutorily required written charge and do not amount to exhaustion of his administrative remedies").

## III. CONCLUSION

For the reasons discussed above, the Court concludes that plaintiff has failed to produce sufficient evidence to create a genuine issue of fact that, if resolved in her favor, would support her claims. Accordingly, FEMA's summary judgment motion is GRANTED.  An Order reflecting this decision is issued separately.

DATE: March 11, 2021                    /s/ *Beryl A. Howell*

                                        BERYL A. HOWELL
                                        Chief Judge
                                        U.S. District Court for the District of Columbia